**UNITED STATES of America, Plaintiff,**

v.

**Ricardo MELENDEZ, et al.,
Defendants.**

**No. CR–89–229 (S5) (ADS).**

United States District Court,
E.D. New York.

Aug. 4, 1990.

Andrew J. Maloney, U.S. Atty., E.D. N.Y., Brooklyn, N.Y. by Peter R. Ginsberg, and Edward A. Rial, Asst. U.S. Attys., and Hochheiser & Aronson, New York City, for defendant Ricardo Melendez; Lawrence Hochheiser, of counsel.

Casey Donovan, New York City, for defendant Oscar Rosa.

David Gordon, New York City, for defendant Vincent Lopez.

Grover & Bloch, New York City, for defendant Wilfredo Gonzalez; Douglas E. Grover, of counsel.

Gerald M. Weiss, New York City, for defendant Nelson Frias.

Anthony Suarez, New York City, for defendant Geraldo Vega.

Allen Lashley, Brooklyn, N.Y., for defendant Ricardo Rodriguez.

Gerald L. Shargel, New York City, for defendant Manuel Concepcion; Alan S. Futerfas, of counsel.

Theodore Krieger, Westport, Conn., for defendant Trent Daley.

Michael M. Milner, New York City, for defendant Edwin Maldonado.

Lynne F. Stewart, New York City, for defendant Marc Ramirez.

Philip Katowitz, New York City, for defendant Armando Velasquez.

Dorf & Perlmutter, New York City, for defendant David Olmeda; Robert C. Dorf, of counsel.

David Cooper, New York City, for defendant Anibal Irizzari.

Gary Schoer, Syosset, N.Y., for defendant Fernando Alvarez.

Epstein, Hus & Weil, New York City, for defendant Israel Ortiz; Lloyd Epstein, of counsel.

Bernard H. Udell, Brooklyn, N.Y., for defendant Warren Nadel.

Martin Elefant, Brooklyn, N.Y., for defendant Roberto Aponte.

Hal Meyerson, New York City, for defendant Hector Hernandez.

Bettina Schein, New York City, for defendant Eduardo Hamilton.

Maurice Sercarz, New York City, for defendant Mariano DeGracia.

## MEMORANDUM DECISION AND ORDER

SPATT, District Judge.

The delicate balance between a criminal defendant's presumption of innocence and sixth amendment right to an impartial jury on the one hand, and the prospective juror's potential fear of retaliation or of outside influence on the other, is at the center of the Court's concern in determining whether there is a need for the drastic remedy of an anonymous jury. Before the Court at this time is the Government's motion for the impaneling of an anonymous jury in this case, which involves a forty seven-count indictment alleging, *inter alia*, murder, kidnapping, assault, money laundering and illegal possession of weapons, all of which surround an alleged extensive organized cocaine and heroin distribution operation based in Brooklyn, New York. In particular, the Government requests that the Court withhold the names, addresses and places of employment of the prospective jurors during voir dire. Since the Court finds that the jurors to be selected in this case need some protection under the circumstances presented, but not to the extent requested by the Government, the motion is partially granted. Accordingly, during the voir dire of this trial, the prospective juror's first names and specific addresses and places of employment will not be revealed. Their surnames, general locations of residence and type of employment may be revealed. Also, the jurors will be in the custody of the United States Marshal from the time they enter the courthouse each day, until the time they leave.

## BACKGROUND

In August and September of 1989, thirty six members of an alleged heroin and cocaine trafficking organization located in Brooklyn, New York, were arrested by the New York Drug Enforcement Task Force. An indictment was later handed down by a Grand Jury impanelled in the Eastern District of New York, charging each of the defendants with violations of the Controlled Substances Act, 21 U.S.C. § 801 *et seq.*, and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968. The original indictment named 39 defendants, three of whom are fugitives. At the present time, twenty-one defendants remain to be tried.

In particular, the indictment alleges that the defendants engaged in numerous acts of kidnapping, murder, assault, money laundering, possession of illegal firearms (including unregistered "Uzi" .9mm submachine guns, semi-automatic pistols and sawed-off rifles), all which was in furtherance of the organization's extensive narcotics trafficking.

The Government alleges that the defendants were members of a highly organized drug distribution operation, which employed tactics of fear, violence and intimidation to gain control over a significant portion of the cocaine and heroin trade in the Williamsburg and East New York sec-

tions of Brooklyn. Brand names such as, "Unknown", "No Mercy" and "Critical", were allegedly used to identify the narcotics distributed by the defendants. The defendants allegedly distributed controlled substances on both the retail and wholesale level.

The organization allegedly reaped enormous profits between 1986 and 1989, which totaled, at one time, approximately $8 million per month. The Government further alleges that in order to protect this lucrative business, violence was used to discipline the organization's members and thwart rivals. Examples alleged include numerous murders and kidnappings, as well as assaults that involved bodily mutilation such as extracting teeth and chopping off fingers.

In support of its motion for an anonymous jury, the Government alleges that since their arrests, certain of the defendants, and their relatives and friends, have made threats of violence to law enforcement personnel, various witnesses and even prosecutors. The Government also argues that many of the defendants have previously been convicted of narcotics offenses and crimes of violence, and have received or could receive sentences that may result in life terms. Finally, the Government expects considerable pre-trial and trial media coverage of this case.

All of the defendants oppose the impaneling of an anonymous jury, primarily on three grounds. First, it is alleged that the use of an anonymous jury infringes upon the defendants' presumption of innocence by instilling the impression of guilt in the jurors' minds. Second, it is alleged that withholding the names, addresses and places of employment prevents meaningful voir dire of the jurors' racial, ethnic and socioeconomic backgrounds. Finally, it is alleged that even assuming the constitutionality of such a procedure, its application is not warranted here.

The Government initially submitted *ex parte*, an affirmation in support of its application for the Court's *in camera* inspection and sealing. The affirmation detailed the Government's allegations of threats of

violence to witnesses, law enforcement personnel and prosecutors. By order dated May 23, 1990, the Court directed counsel for all parties to appear for oral argument. At that time, the Government's chief trial counsel did verbally advise the Court and counsel for the defendants of certain of these allegations. At oral argument, the Government was given the option to either provide copies of the affirmation to the defendants, or withdraw the affirmation. Receiving no response, on July 6, 1990, the Court returned the Government's affirmation, advising that it would not consider its contents in making a determination unless copies were served on all counsel.

## DISCUSSION

The use of an anonymous jury for the purposes of voir dire was first upheld in this circuit in the celebrated case of *United States v. Barnes*, 604 F.2d 121 (2d Cir. 1979), *cert. denied*, 446 U.S. 907, 100 S.Ct. 1833, 64 L.Ed.2d 260 (1980), involving the trial of Leroy "Nicky" Barnes. The trial judge in *Barnes* determined, *sua sponte*, that a limited voir dire in which the names, addresses and neighborhoods of prospective jurors would not be disclosed, was appropriate (*see* 604 F.2d at pp. 134, 137), in light of the seriousness of the charges, extensive pretrial publicity and indications of the defendants' willingness to interfere with the judicial system (*see* 604 F.2d at p. 141). The trial judge, however, did conduct an extensive voir dire, and asked the jurors to disclose the counties in which they resided (*see* 604 F.2d at p. 135).

Since *Barnes*, "many trials involving multiple-defendants indicted on racketeering and narcotics charges have been tried to anonymous juries" (*Hayden v. United States*, 814 F.2d 888, 892 [2d Cir.1987]). The Second Circuit has repeatedly upheld the use of the procedure under appropriate circumstances (*see, e.g., United States v. Tutino*, 883 F.2d 1125, 1132–33 [2d Cir. 1989], *cert. denied*, —— U.S. ——, 110 S.Ct. 1139, 107 L.Ed.2d 1044 [1990]; *United States v. Persico*, 832 F.2d 705, 717–18 [2d Cir.1987], *cert. denied*, 486 U.S. 1022, 108 S.Ct. 1995, 100 L.Ed.2d 227 [1988]; *United*

*States v. Ferguson,* 758 F.2d 843, 854 [2d Cir.], *cert. denied,* 474 U.S. 1032, 106 S.Ct. 592, 88 L.Ed.2d 572 [1985]; *United States v. Thomas,* 757 F.2d 1359, 1364–65 [2d Cir.], *cert. denied,* 474 U.S. 819, 106 S.Ct. 66, 88 L.Ed.2d 54 [1985]).

Critics have attacked the procedure as an assault on the criminal defendant's entitlement to a presumption of innocence, as well as an infringement of the sixth amendment right to an impartial jury (*see generally* Abramovsky, *Juror Safety: The Presumption of Innocence and Meaningful Voir Dire in Federal Criminal Prosecutions—Are They Endangered Species?,* 50 Fordham L.Rev. 30 [1981] [criticizing procedure employed by *Barnes* court]). On the other hand, proponents contend that the procedure is necessary in those limited cases where jurors may reasonably fear retaliation or actually be exposed to intimidation (*see generally* Note, *Anonymous Juries,* 54 Fordham L.Rev. 981 [1986] [advocating juror anonymity in extraordinary cases to ensure jury is free from fear, intimidation and outside influence]).

In balancing the competing interests of these relative positions, the Court recognizes that the presumption of innocence is part of the cornerstone of our criminal justice system and is considered one of the major basic components of a fair criminal trial (*see Estelle v. Williams,* 425 U.S. 501, 503, 96 S.Ct. 1691, 1692, 48 L.Ed.2d 126 [1976]). While, there is no *per se* rule prohibiting the courts from placing reasonable burdens on this presumption (*see United States v. Thomas, supra,* 757 F.2d at p. 1363), in doing so the courts must carefully consider the degree of prejudice to the defendant weighed against the magnitude of threat to jurors.

The Second Circuit has enunciated the following considerations which govern the Court's determination as to the use of an anonymous jury:

" 'there must be, first, strong reason to believe that the jury needs protection and, second, reasonable precaution must be taken to minimize the effect that such a decision might have on the jurors' opinions of the defendants' ".

*United States v. Tutino, supra,* 883 F.2d at p. 1132, *quoting United States v. Thomas, supra,* 757 F.2d at p. 1365.

In determining whether the impaneling of an anonymous jury is necessary and proper under the circumstances presented in this case, the following elements serve as a guidepost for the Court's consideration:

(1) the seriousness of the offenses charged, including whether the defendants are alleged to have engaged in dangerous and unscrupulous conduct in the context of a large-scale criminal organization and whether the defendants have access to means to harm jurors;

(2) whether the defendants have engaged in past attempts to interfere with the workings of the judicial process, such as by jury tampering or attempts to evade prosecution; and,

(3) the nature and degree of pretrial and expected trial publicity.

*See United States v. Coonan,* 664 F.Supp. 861, 862 [S.D.N.Y.1987]; *United States v. Persico,* 621 F.Supp. 842, 878 [S.D.N.Y. 1985]; *see also* Note, *Anonymous Juries, supra,* 54 Fordham L.Rev. at p. 1001–02.

In considering these factors, the Court recognizes that generally the questions to be asked on voir dire rest entirely within the sound discretion of the trial judge (*see Rosales–Lopez v. United States,* 451 U.S. 182, 189, 101 S.Ct. 1629, 1634, 68 L.Ed.2d 22 [1981]).

The underlying predicate acts allegedly committed for this RICO prosecution are crimes of the most serious type, namely, murders, kidnappings, assaults with a deadly weapon and illegal weapons possession, among others. In order to maintain the stability and strength of this alleged major drug organization, the Government alleges that the defendants engaged in violent, dangerous and unscrupulous conduct. In addition to murder and kidnapping, the Government contends that the defendants engaged in pulling teeth and severing fingers of some members within the organization. In sum, there is no question that as to the first element, the seriousness of the charges militates in favor of an anonymous

jury. The Court also finds that due to the alleged large-scale operation of the organization, including the amount of participants and territory covered and the amount of the money allegedly involved, the defendants could have access to means to harm and/or threaten jurors.

However, as to the second element, even though some of "[t]hese defendants are no strangers to the criminal justice system" (*United States v. Coonan, supra,* 664 F.Supp. at p. 862), there has been no proof offered by the Government, other than bare assertions, that these defendants attempted to interfere with the judicial process in the past or in connection with this case in particular. Several of the defendants have been convicted of other serious crimes in state court, yet the Government has failed to show any tampering or other attempts to interfere with witnesses, prosecutors or jurors in those cases.

Rather than claiming that prior attempts at interference with the judicial process were made, the Government primarily relies upon alleged threats made to witnesses and prosecutors. In this connection, the Government submitted an *ex parte* affirmation, which the Court refused to consider on this application, unless counsel for all parties were furnished with copies. Instead of furnishing copies to counsel, chief trial counsel for the Government read portions into the record at oral argument. In substance, it is alleged that threats of violence have been made to various prosecutors assigned to the case, as well as Government witnesses. Although the Court is concerned as to such allegations, the Government has failed to show with any reasonable certainty that these threats are related to this case. Although arguably the incidents recounted by the Government could relate to the prosecution of this case, at best they are equivocal and could in fact be wholly unrelated. Accordingly, as to the second element, the Court does not find that there have been attempts in past cases, or even in this one, to interfere with the judicial process based upon the tenuous and equivocal evidence presented.

The Court is, however, concerned about the alleged threats to co-defendants and in particular to those who have pled guilty. According to the Government, "[t]here have been contracts to kill witnesses" (Transcript, dated June 1, 1990, at p. 23), which the Government set forth in detail in its offer of proof at oral argument (*see id.* at pp. 23–26). It is primarily because of these serious allegations that the Court believes that the prospective jurors are in need of some protection.

The third element requires an even less detailed analysis. Except for the presence of a reporter at a suppression hearing, the Government has not provided the Court with any pretrial publicity of this case in any media, nor has the Court observed any such publicity on its own. In fact, thus far, to the Court's knowledge, the pretrial proceedings have been attended solely by friends and family of the defendants. To this Court's knowledge, no members of the press or media have ever been present. The Government claims that once the trial begins, however, so will the publicity. Since any procedure tending to burden the presumption of innocence must receive close scrutiny (*see United States v. Coonan,* 664 F.Supp. at p. 862), the Court declines to justify the drastic remedy of impaneling a totally anonymous jury on such speculation (*cf. United States v. Corrao,* No. 86 CR 556, 1988 WL 36329 [S.D. N.Y. Apr. 8, 1988] [LEXIS, Genfed library, Dist file] ).

Based upon the foregoing, after weighing all relevant factors and considering the submissions of the parties, the Court is of the view that the use of an anonymous jury for the purpose of voir dire, by totally withholding their names, addresses and places of employment, is not necessary under the present factual situation. However, since the crimes charged here are of a very serious nature, the size and resources of the alleged drug organization afford the defendants with access to means to harm or threaten jurors and there are allegations to threats to witnesses, the Court grants the Government's motion, but only to the following extent: The first names of all prospective jurors will be withheld and not

disclosed; the surnames of the jurors, however, will be revealed. The specific residence addresses of the prospective jurors will not be disclosed; but the counties and general areas or neighborhoods in which they live will be revealed. The specific names and addresses of places of employment will not be disclosed; however, the general type of employment will be revealed. The jurors will also be kept in the custody of the United States Marshal from the time of their arrival at the courthouse until the conclusion of each day.

This modified procedure is not unprecedented (*see, e.g., United States v. Giovanelli*, No. S 88 CR 954, 1989 WL 39657 [S.D.N.Y. Apr. 19, 1989] [LEXIS, Genfed library, Dist file]), and should provide the necessary safety for the jurors, and at the same time preserve the defendants' presumption of innocence. In this manner, the Court avoids excessive precaution which might affect the impartiality of a juror. In this Court's view, the approach employed here will provide the proper precaution but will not diminish the presumption of innocence or prevent meaningful voir dire.

SO ORDERED.