**UNITED STATES of America, Plaintiff,**

v.

**Stanley FRIEDMAN, Michael Lazar, Lester Shafran, Marvin Kaplan, Marvin Bergman and David Leff, Defendants.**

**No. SS 86 Cr. 259(WK).**

United States District Court,
S.D. New York.

May 29, 1986.

Rudolph W. Giuliani, U.S. Atty., S.D.N.Y. by William J. Schwartz and David M. Zornow, Asst. U.S. Attys., for plaintiff.

Thomas P. Puccio, Stroock, Stroock & Lavan, Victor J. Rocco, Botein Hays & Sklar, Larry J. Silverman, Russo Silverman & Vitaliano, Gerald B. Lefcourt, New York City, and Stephen R. Mahler, Mahler & Harris, Kew Gardens, N.Y., for defendants.

## MEMORANDUM & ORDER

WHITMAN KNAPP, District Judge.

A wide variety of motions have been presented by the several defendants. Most of them have, as a practical matter, been disposed of in the course of oral argument. The following will be dealt with in this opinion: 1) Should any of the defendants (except Leff who has not yet had an opportunity to be heard) receive separate trials either as a matter of right or discretion? 2) With respect to the defendant Kaplan, is a pattern of racketeering activity sufficiently alleged under the Racketeer Influenced And Corruption Organizations Act (RICO), 18 U.S.C. § 1961 *et seq* (1984)? 3) What, if any, relief can this Court afford the defendants because of the publicity surrounding the Grand Jury investigation?

## SEVERANCE

█ The government alleges that Geoffrey Lindenauer and Donald Manes systematically converted the New York City Parking Violations Bureau into a racketeering enterprise from in or about late 1979 to in or about January 1986. It further alleges that at some point within that time period each defendant, with realization of its scope, knowingly became involved in contributing to the success of that enterprise through a pattern of racketeering activity. If the government can prove this as to each defendant, each would be properly convicted of a violation of RICO. It follows that they are properly joined in one indictment under Fed.R.Crim.P. 8. No defendant therefore is entitled to a severance as a matter of law.

█ In considering the question of prejudicial joinder under Fed.R.Crim.P. 14, we cannot be governed by our personal belief that the RICO statute is an unwise and unfair piece of legislation. Therefore we can, without concluding that defendants are entitled to separate trials, accept their argument that some of them would be subject to "spillover" in the sense of having to be tried in a case involving fraudulent activities much more extensive than anything in which they specifically agreed to participate. It was precisely because the Congress was concerned with the seriousness of "racketeering activity" that it wished to make it easier for the government to convict those even peripherally engaged therein, provided that they themselves were aware of the broader scope of the activity involved. Consequently it seems to us that a court should not grant a severance in a RICO case unless it concludes: 1) as did

Judge Duffy in *United States v. Castellano* (S.D.N.Y.Sept.1985) 84 Cr. 63 (KTD), that the number of defendants and transactions grouped together in one indictment would render the trial unmanageable; or 2) that some defendant or defendants were "prejudiced" in some manner not contemplated by the Congress; or 3) that some defendant or defendants have successfully made some other particularized appeal to the court's conscience. None of these considerations apply to the defendants now before us.

■ With respect to spillover, no defendant has been able to demonstrate that any evidence would be admissible at a joint trial which the government could not, if it wished, offer in a separate trial against him. In that respect this case is clearly distinguishable from *United States v. Figueroa* (2d Cir.1980) 618 F.2d 934, 946, upon which defendants rely in making the spillover argument. In *Figueroa* the Court of Appeals held that the erroneous admission of evidence of prior criminal acts by a co-defendant unfairly prejudiced the other defendants as well. Since evidence of another person's criminal record, unlike the enterprise proof in a RICO case, would never be admissible against a defendant being tried alone, *Figueroa* is inapposite to the case at bar.

## PATTERN OF RACKETEERING ACTIVITY

Defendant Kaplan argues that the allegations against him fail to allege a "pattern" of racketeering activity because, at most, he is charged with arranging to pay two bribes in order to get a contract for his company. Relying on a footnote in *Sedima S.P.R.L. v. Imrex Co., Inc.*, (1985) — U.S. ——, 105 S.Ct. 3275, 3283 n. 14, 87 L.Ed.2d 346, and subsequent opinions in the civil context interpreting the pattern requirement in light of that footnote, *see Superior Oil Co. v. Fulmer* (8th Cir.1986) 785 F.2d 252; *Soper v. Simmons* (S.D.N.Y. 1986) (Sand, J.) 632 F.Supp. 244 (and cases cited therein); *Northern Trust Bank/O'Hara, N.A. v. Inryco, Inc.* (N.D.

Ill.1985) 615 F.Supp. 828, Kaplan urges that since the government has not alleged that he committed a pattern, he is entitled to dismissal of the indictment. We disagree.

A pattern of racketeering activity is defined by the RICO statute as requiring "at least two acts of racketeering activity ... within ten years." 18 U.S.C. § 1961(5). The oft-cited *Sedima* footnote first observes that

the definition of "pattern of racketeering activity" differs from the other provisions in § 1961 in that it states that a pattern *"requires* at least two acts of racketeering activity." § 1961(5) (emphasis added by Supreme Court), not that it "means" two such acts. The implication is that while two acts are necessary they may not be sufficient.

It then quotes with approval from Senate and House Reports regarding the bill.

"The target of RICO is thus not sporadic activity. The infiltration of legitimate business normally requires more than one 'racketeering activity' and the threat of continuing activity to be effective. It is this factor of continuity plus relationship which combines to produce a pattern ...." Significantly, in defining "pattern" in the same bill, Congress was more enlightening: "criminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events:"

105 S.Ct. at 3285 n. 14.

Thus it has become clear that something more than merely two prior acts is required. The question remains how much more.

The cases cited by defendants all arose in the civil context. None involved a pre-existing racketeering enterprise that the defendant is alleged to have joined with knowledge of its scope. None presented the question of whether an individual who commits the requisite two predicate acts

and involves himself in the affairs of the enterprise in other ways not charged as RICO predicate acts can properly be charged with a pattern of racketeering activity.

■ Although there is no case settling these questions one way or the other, we believe that the statute's requirement of "at least" two acts, combined with the Supreme Court's requirement of "continuity plus relationship" is satisfied by a showing that the two predicate acts were committed with the knowledge that they were part of an ongoing racketeering enterprise and with the intention of furthering its success.

■ In this case the indictment alleges that Kaplan "knowingly" conducted and participated in the affairs of the enterprise through a pattern of racketeering activity. It also alleges that he committed perjury under circumstances which, on their face, suggest knowledge of the existence of the enterprise and the intent to further its success. The government also advises us that it will show at trial that Kaplan took further steps to facilitate the functioning of this racketeering enterprise in his alleged participation in a scheme to help Friedman launder money obtained in connection with Operation Scofflock. We therefore deny Kaplan's motion to strike the RICO count. However, as the "pattern" question is clearly not free from doubt,[1] it would be appropriate to observe that the question may again be raised in connection with a Rule 29 motion.

## PUBLICITY

Counsel for defendant Lazar, acting in this instance on behalf of all defendants, has amassed a considerable body of evidence suggesting that one or more employees of the Department of Justice have violated Fed.R.Crim.P. 6(e) by disclosing evidence that was presented to the Grand Jury. Indeed, unless the media was wholly irresponsible in continually asserting that the source of these revelations was someone in the Department of Justice who was asking not to be identified, it may well be said that such improper disclosure has been established by the sheer number of newspaper articles citing such an authority in providing information that turned out to be accurate. However, the question remains whether or not this Court is in a position to take effective action to remedy the situation.

It may well be that the Attorney General of the United States would be interested in ascertaining which of his employees was engaged in violating one of the statutes he or she was sworn to uphold, or the Congress might deem such an inquiry appropriate. However, we fail to see how we can take effective action in light of our primary obligation to provide a fair trial to the defendants before us. Any inquiry we might conduct to try to determine responsibility for the unauthorized leaks could only unleash a flood of publicity which would dwarf anything heretofore experienced, and would certainly do nothing to relax the pressures under which the trial would proceed.

■ Moreover, the defendants have not suggested any relief to which they would be entitled should we succeed in fastening responsibility on any person or persons. They concede that there is no authority suggesting that dismissal of an otherwise valid indictment would be appropriate. Defendant Friedman made a suggestion which at first appealed to us, namely that the case against him be severed. Upon reflection we realize that it would not alleviate, and might exacerbate, the problems of which defendants complain. Such a severance and the ensuing successive trials would generate additional publicity which would probably harm not only the defendant who had been severed, but all the other

1. It might seem reasonable for a defendant to argue that the inability of the Supreme Court, or any other court, to specify exactly what conduct RICO criminalizes renders the statute unconstitutional. However, we recognize that a plethora of Supreme Court and Court of Appeals decisions have indicated directly or by implication that, notwithstanding its incomprehensibility, the statute is nonetheless constitutional.

defendants as well. We believe the government is correct in its assertion that a change of venue or postponement are the only judicial remedies available for excessive publicity. Both of those remedies have been specifically rejected by the defendants.[2]

### CONCLUSION

In summary, we deny all defendants' motions for severance, Kaplan's motion to strike the RICO count, and Lazar's application to conduct a hearing with respect to Grand Jury publicity. The trial shall commence on June 16, 1986.

SO ORDERED.

---

**2.** Friedman argues that the remedy of postponement is unavailable to him because it would thwart his desire to have the trial on the federal indictment precede the state trial. This argument necessarily proceeds on the unstated assumption that a Justice of the New York Supreme Court would be less sensitive than we in evaluating the needs of postponement to alleviate prejudice arising out of undue publicity. There is no basis whatever for such an assumption.