UNITED STATES of America

v.

James COONAN, a/k/a "Jimmy," Kevin Kelly, James McElroy, a/k/a "Jimmy Mack," William Bokun, Kenneth Shannon, John Halo, Edna Coonan, a/k/a "Julia Coonan," Richard Ritter, a/k/a "Muggsy," Thomas Collins, and Florence Collins, Defendants.

No. 87 Cr. 249 (WK).

United States District Court, S.D. New York.

July 29, 1987.

Rudolph W. Giuliani, for U.S.; Mary Lee Warren, David Brodsky, Asst. U.S. Attys., of counsel.

Gerald Shargel, New York City, for James Coonan.

Fern H. Schwaber, New York City, for James McElroy.

Alfred M. Christiansen, New York City, for William Bokun.

Frank Lopez, Sercarz, Schechter & Lopez, Brooklyn, for Edna Coonan.

Robert Blossner, New York City, for John Halo.

Lawrence H. Schoenach, New York City, for Richard Ritter.

Ronald L. Garnett, Wiggins, Holt & Garnett, New York City, for Thomas Collins.

John P. Curley, Legal Aid Federal Defenders, New York City, for Florence Collins.

## MEMORANDUM & ORDER

**WHITMAN KNAPP, District Judge.**

The Government moves for empanelment of an anonymous jury. Specifically, the Government requests that: (a) voir dire be conducted without disclosing the names, addresses or places of employment of prospective jurors; (b) during trial, the jurors be kept together during recesses and taken to lunch as a group each day by the United States Marshals Service; and (c) at the end of each trial day the jurors be transported together by the Marshals from the courthouse to an undisclosed location, from which they can leave for their respective homes. For the reasons outlined below, we deny the motion with the exception noted.

■ As the Second Circuit has recognized, the "presumption of innocence" is part of the foundation of our system of criminal justice, and a practice which burdens it—such as the use of an anonymous jury—must receive careful scrutiny. *United States v. Thomas* (2d Cir.1985) 757 F.2d 1359, 1363. At the same time, "[j]ustice requires that when a serious threat to juror safety reasonably is found to exist, precautionary measures must be taken." *Id.* at 1364. Accordingly, we are directed to balance the government's interest in safeguarding jurors with the defendants' interest in avoiding erosion of the presumption of innocence. *Id.* at 1365. Our analysis is

to be guided by the following factors: 1) the seriousness of the offenses charged, and whether defendants are alleged to be part of a group that possesses the means to harm jurors, 2) whether defendants have engaged in past attempts to interfere with the judicial process, and 3) the degree of pretrial publicity. *United States v. Barnes* (2d Cir.1979) 604 F.2d 121, 141, *cert. denied* (1980) 446 U.S. 907, 100 S.Ct. 1833, 64 L.Ed.2d 260; *Thomas, supra,* 757 F.2d at 1364–5; *United States v. Persico* (S.D.N.Y. 1985) 621 F.Supp. 842, 878.

■ The indictment charges the defendants with participating in predicate acts including murder, attempted murder, kidnapping, loansharking, extortion, and narcotics trafficking as part of a racketeering enterprise known as the Westies. These allegations certainly establish the "dangerous and unscrupulous conduct" to which the Court of Appeals referred in *Barnes, supra,* 604 F.2d at 141.

With respect to past attempts to interfere with the judicial process, however, the situation is quite different. These defendants are no strangers to the criminal justice system. Indeed, the papers before us reveal numerous felony prosecutions in which one or more of the defendants or their co-conspirators have been involved. Yet there is no suggestion in the papers that any defendant or co-conspirator had attempted in any way to tamper with a jury or juror, either by bribery, harrassment, intimidation or otherwise. Nor is there any suggestion that there was in any of those cases an attempt to interfere with the working of the judicial process, such as, for example, mounting "a campaign that targetted individual U.S. Attorneys or grand jurors [involved in the case] and [held] them accountable for the impact of their actions," *United States v. Ferguson* (2d Cir.1985) 758 F.2d 843, 854, or procuring the issuance of false writs in the name of a United States District Court, *Persico, supra,* 621 F.Supp. at 878.[1]

---

1. There is a tape recorded conversation in which defendant McElroy reported having been ordered by defendant Coonan to locate and

murder two government witnesses in this case. Assuming that we would be justified in relying on McElroy's uncorroborated statement in

In this connection, we note that it has been our observation over the years that there is a category of persons who, although prone to the most outlandish conduct, seem to draw the line at interfering with those who are engaged in the administration of the judicial process. As far as shown by the papers before us, these defendants can (assuming the validity of the allegations in the indictment) lay claim to being within that category. Until some evidence to the contrary appears, we should treat them accordingly.

Finally, we are not persuaded that anonymity is necessary in order to protect the jury's privacy from invasion by the media. Our experience during the trial of *United States v. Friedman, see* 635 F.Supp. 782 (S.D.N.Y.1986), demonstrates otherwise. Despite the extensive publicity and media coverage generated by that case, and the free access which the press had to the names, addresses and backgrounds of the jurors, and indeed to the jurors themselves, we are aware of no incident where a juror was approached by the press during the trial. After the verdict, the press respected the wishes of those jurors who indicated that they did not desire to be interviewed. We are confident that the reporters covering this proceeding will be equally mindful of the jurors' privacy.

In conclusion, weighing the above factors, the scale in this case tips in favor of the defendants. Accordingly, the government's motion for an anonymous jury is denied, with the following qualification: it has long been our general practice—even in civil cases—to preclude questioning jurors as to their exact addresses or places of employment. Such a practice will be followed in this case as well. With respect to the collateral relief requested by the government, we have entered an Order directing that the jurors shall be kept in the custody of the United States Marshal upon their arrival at the courthouse until after the close of court each day, and that the Marshal make all appropriate arrangements for transportation of jurors from the courthouse at the end of each day.

SO ORDERED.

granting this rather drastic relief against all defendants, his allegation is more consistent with the Westies' conduct charged in the indict-

ment, rather than suggesting conduct aimed at the judicial process.