**UNITED STATES of America,**

v.

**Eric MILLAN, et al., Defendants.**

**No. S9 91 Cr. 685 (SWK).**

United States District Court,
S.D. New York.

April 16, 1993.

---

Roger S. Hayes, Acting U.S. Atty., for the S.D. of N.Y., New York City by Dietrich L. Snell, Asst. U.S. Atty., Roland G. Riopelle, Asst. U.S. Atty., for U.S.

Benjamin Brafman, New York City, for defendant, Vincent Basciano.

Maurice H. Sercarz, New York City, for defendant, Alfred Bottone.

David Breitbart, New York City, for defendant, Alfred Bottone, Jr.

Gerald LaBush, New York City, for defendant, Anthony Bottone.

Mitchell Golub, Golub & Dunn, New York City, for defendant, Noel Melendez.

Anthony Cueto, New York City, for defendant, John O'Rourke.

David Richman, New York City, for defendant, Ralph Rivera.

Kenneth D. Wasserman, New York City, for defendant, Samanta Torres.

James C. Neville, Harwood & Neville, New York City, for defendant, Larry Weinstein.

## ORDER

KRAM, District Judge.

Trial of this case, which includes charges of conspiracy to distribute and possess heroin, commenced on March 1, 1993. On March 12, 1993, the Court learned that three agents involved in the *Millan* investigation, namely, New York State Police Detective Jeffrey Beck ("Beck"), Sergeant Joseph Termini ("Termini") and Investigator Robert Robles ("Robles"), had been arrested for narcotics trafficking. Thereafter, the trial was adjourned and a hearing conducted to determine whether any instances of alleged misconduct tainted the investigation underlying this case. Following the hearing, the Court determined that there was no evidence that the alleged misconduct had any bearing on the *Millan*, 817 F.Supp. 1072 investigation. Nevertheless, by Order dated March 29, 1993 (the "Order"), the Court granted defendants' request for additional disclosure and cross-examination regarding the Robles/Beck/Termini investigation.

Information has recently come to light, however, which once again jeopardizes the prosecution of this case. Specifically, on April 14, 1993, the Court learned that between $50,000 and $80,000, seized from the trunk of a white 1991 Mitsubishi Galant sedan during the arrest of defendant Carlos Rivera ("Rivera"), is now missing. The facts suggest that at the time of Rivera's arrest on August 1, 1991, somewhere between $50,000 and $80,000 was recovered from the trunk of his car by Agent Beck and Investigator Michael Brosnan. *See* Sealed Affirmation of Dietrich L. Snell, dated April 14, 1993 (the "Snell Aff."). At some point thereafter, $12,000 was delivered by Agent Beck and Investigator Brosnan to the office of Sergeant Dennis Johnston—Group Supervisor of the

New York Drug Enforcement Task Force unit responsible for the *Millan* investigation. Snell Aff. at ¶ 8. Neither the $80,000 originally seized, nor the $12,000 admittedly transported, was ever vouchered, however. In fact, official Drug Enforcement Administration ("DEA") reports, regarding the Rivera arrest and seizure, do not indicate that any money was recovered from the vehicle. Snell Aff. at ¶ 4. In addition, the Government cannot account for the whereabouts of either sum. Brosnan now claims that he cannot confirm the amount seized as he was "preoccupied with an electronic ignition lock inside the car while Detective Beck began to search the [car's] trunk." Snell Aff. at ¶ 8. Similarly, Sergeant Johnston does "not recall anyone showing him any money seized from the [car]." Snell Aff. at ¶ 9. Beck has yet to be questioned. Snell Aff. at ¶ 11.

In light of this most recent disclosure, evidencing misconduct during the time of, and in connection with, the *Millan* investigation, the defendants [1] now move for a mistrial. The Government opposes their motion.

### DISCUSSION

■ A mistrial is appropriate "whenever in [the trial judge's] opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated." *United States v. Peng*, 602 F.Supp. 298, 304 (S.D.N.Y.), *aff'd*, 766 F.2d 82 (2d Cir.1985) (quoting *United States v. Perez*, 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165 (1824)). The test as to what constitutes manifest necessity is not susceptible to any mechanical formula, but rather, must be evaluated according to the facts and circumstances of each particular case. *United States v. Huang*, 960 F.2d 1128, 1135 (2d Cir.1992); *Dunkerley v. Hogan*, 579 F.2d 141, 145 (2d Cir.1978), *cert. denied*, 439 U.S. 1090, 99 S.Ct. 872, 59 L.Ed.2d 56 (1979). Having taken all the circumstances in this case into consideration, the Court finds that there is a manifest necessity to declare a mistrial.

■ As an initial matter, the Court finds that the Government's opening statement, intimating that Robles was a reliable, credible witness who would be providing significant testimony at trial, has created such prejudice that, at this point, neither side will receive a fundamentally fair trial. The Government's obligation during opening arguments is quite clear. Although the opening statement should be an objective summary of the evidence reasonably expected to be produced, *see United States v. Brockington*, 849 F.2d 872, 875 (4th Cir.1988), the prosecutor may not refer to evidence which will be inadmissible or unsupported at trial. *United States v. Novak*, 918 F.2d 107, 109 (10th Cir.1990). "To make statements which will not or cannot be supported by proof is, if it relates to significant elements of the case, prosecutorial misconduct. Moreover, it is fundamentally unfair to an opposing party to allow an attorney, with the standing and prestige inherent in being an officer of the court, to present to the jury statements not susceptible of proof but intended to influence the jury in reaching a verdict." *United States v. Dinitz*, 424 U.S. 600, 612, 96 S.Ct. 1075, 1082, 47 L.Ed.2d 267 (1976) (Burger, J., concurring); *see also Arizona v. Washington*, 434 U.S. 497, 512, 98 S.Ct. 824, 834, 54 L.Ed.2d 717 (1978) ("An improper opening statement unquestionably tends to frustrate the public interest in having a just judgment reached by an impartial tribunal."). Thus, an improper opening statement is often sufficient ground to declare a mistrial. *See e.g., Arizona v. Washington*, 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978); *United States v. Peng*, 602 F.Supp. 298 (S.D.N.Y.), *aff'd*, 766 F.2d 82 (2d Cir.1985).

■ In the case at hand, during opening arguments, the Government told the jury that "the evidence will show" that Robles played a pivotal role in four undercover purchases of heroin which provided the foundation for the wiretap applications in this case. *See* Trial Transcript ("Tr.") at 39. In light of the subsequent allegations of misconduct, however, the Government now admits that Robles will not be called as a witness at trial. Although the Government should have been aware of the problems with its opening argu-

---

1. All defendants, with the exception of Alfred Bottone, Jr., join in this motion.

ment,[2] it took no steps to resolve the predicament before the jury was empaneled. Neither the Court nor defense counsel was given the slightest indication that a question had arisen regarding misconduct by agents involved in the *Millan* investigation. At a minimum, the Government should have brought the allegations against Robles, Beck and Termini to the Court's attention so that the matter could have been resolved before opening arguments, thus, avoiding the necessity for a mistrial.

As this procedure was not followed, the Court, in an attempt to cure the taint caused by the Government's opening, permitted defense counsel to extensively cross-examine Government witnesses regarding the alleged wrongdoing by Robles, Beck and Termini. *See* Order at 24. In light of the most recent allegations, however, the Court finds that no amount of cross-examination is now sufficient to cure the prejudice to the defendants. Each week the Government reveals new allegations of misconduct involving an ever widening circle of police officers over an ever longer period of time. The ongoing, unpredictable nature of the Robles investigation, places defendants in the untenable position of having to restrategize, and recall and reexamine witnesses on a daily basis.[3] Similarly, the Court will have to revisit its prior opinions and rulings, which are premised on possibly stale information, as new evidence of police corruption comes to light. Thus, the Court foresees a potential for incurable prejudice as the defendants are forced to adjust to the shifting allegations against the agents involved in the *Millan* investigation.

Of equal concern is the Government's ability to establish a clear chain of custody over the evidence. From the information now disclosed, it is apparent that the Government is unable to account for an unknown quantity of money seized by Agents Beck and Brosnan during the arrest of defendant Carlos Rivera. In substance, a bag containing approximately $12,000, which was placed in the locked office of Sergeant Johnston at his direction, has disappeared. Snell Aff. at ¶¶ 8, 11. Sergeant Johnston has no recollection as to the money's existence or whereabouts. *Id.* at ¶ 9. This chain of events is especially problematic given that Sergeant Johnston was responsible for coordinating the simultaneous execution of approximately fifty search warrants and approximately forty arrest warrants by several hundred law enforcement officers on August 1, 1991. *Id.* at ¶ 9. In addition, the evidence suggests that an amount totalling roughly $50,000—$80,000 was originally seized from Rivera. Tr. at 1864; Snell Aff. at ¶¶ 6, 10. Neither quantity is documented in any report or currently in the Government's possession. This disappearance is currently the subject of an internal investigation by the DEA, and the New York City and State Police Departments. Snell Aff. at ¶ 11. At this point, without further investigation, the Court simply cannot determine whether the entire vouchering process in this case is now suspect.

Furthermore, the Court has grown increasingly troubled by the possibility that future inquiries will reveal additional instances of misconduct affecting this case. Although the Court does not believe that the Government's actions in this matter were calculated to provoke a mistrial, the Government may, on the other hand, be unconsciously avoiding knowledge of any police misconduct infecting the *Millan* case. For instance, although the Court recognizes that certain evidence demonstrates wrongdoing during the period of the *Millan* investigation, *see* Order at 22–23, the Government continues to maintain that "the record is clear that all of the allegations against Robles, Beck, or Termini relate to events that occurred well after the conclusion of the *Millan* wiretaps." Letter from Dietrich L. Snell to the Honorable Shirley Wohl Kram, dated 3/17/93, at 2; *see also* Letter from Dietrich L. Snell to the Honorable Shirley Wohl Kram, dated 3/24/93, at 1 ("Simply put, there is *no* credible evidence that any misconduct by the NYDETF

---

2. It is clear from the debriefing materials supplied by the Government that the Robles investigation began sometime in December 1992, nearly three months before the openings in this case.

3. The defendants have already intimated that two witnesses, Special Agent David Dongilli and Special Agent Richard Demurjian, will have to be recalled and cross-examined. Tr. at 1871.

officers occurred while the *Millan* investigation was under way."); Tr. at 1862 ("nothing that has been uncovered to date strikes the integrity of this prosecution at all."). In fact, it is the defendants and their counsel, rather than the Government, who have brought to the Court's attention specific instances of misconduct, which allegedly occurred during the *Millan* investigation.

Moreover, there are other examples of unconscious avoidance on the part of the Government. For instance, a review of the notes taken at various debriefing meetings with Robles, Beck and Termini reveals little attempt by the Government to specifically ascertain the extent and duration of the agents' corruption. Even now, the Government has not, by their own admission, debriefed Beck regarding the missing $80,000. Snell Aff. at ¶ 11. In addition, despite the Government's representation to the Court approximately two weeks ago, the Government's case against Robles has not been diligently pursued. Specifically, no cooperation agreement has been signed between the Government and Robles. As a result, defendants are precluded from either calling Robles as a witness or effectively cross-examining him at trial. Based on these factors, the Court is troubled that defendants and their counsel are not yet in possession of all the evidence which might tend to impeach government witnesses or otherwise exculpate the defendants.

Finally, it must be noted that the Court has explored alternatives to granting a mistrial and finds them impractical. For example, a continuance until the completion of the Robles investigation would only expose the empaneled jurors to months of uncertain delay well beyond their appointed term. *See United States v. Peng,* 602 F.Supp. at 305 (holding that a mistrial may be found where an extended period will elapse before resumption of trial). Similarly, a severance must be rejected in light of the fear of incurable prejudice in the current proceedings, concerns for judicial economy, and the express consent of all but one of the defendants

to a mistrial. *See United States v. Bauman,* 887 F.2d 546, 552 (5th Cir.1989). At this point, it is also naive to assume that additional cross-examination, a *Franks* hearing [4], further opening arguments or similar measures designed to cure the prejudice would effectively address the concerns raised by defendants. Thus, keeping in the forefront every defendant's "valued right to have his trial completed by a particular tribunal," *see Wade v. Hunter,* 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949), the Court cannot ignore that this right "must in some instances be subordinated to the public's interest in fair trials designed to end in just judgments." *Id.; see also Arizona v. Washington,* 434 U.S. at 505, 98 S.Ct. at 830. Accordingly, the Court finds that a mistrial must be declared because of manifest necessity.

### CONCLUSION

For the reasons cited above, the defendants' motion for a mistrial is granted.

SO ORDERED.

---

**4.** The Court believes that a *Franks* hearing would accomplish little as Robles, Beck and Termini are still under investigation, and could assert their Fifth Amendment privilege against self incrimination in response to any questioning regarding their alleged corruption.