**UNITED STATES of America**

v.

**Eric MILLAN–COLON, et al., Defendants.**

**No. S9 91 Cr. 685 (SWK).**

United States District Court, S.D. New York.

Sept. 22, 1993.

Mary Jo White, U.S. Atty. for the S.D.N.Y., New York City by Dietrich L. Snell, Asst. U.S. Atty., Roland G. Riopelle, Asst. U.S. Atty., for U.S.

Gino Josh Singer, New York City, for defendant, Eric Millan–Colon.

Benjamin Brafman, New York City, for defendant, Vincent Basciano.

Maurice H. Sercarz, New York City, for defendant, Alfred Bottone.

David Breitbart, New York City, for defendant, Alfred Bottone, Jr.

Frank A. Lopez, New York City, for defendant, Anthony Bottone.

John Burke, Brooklyn, NY, for defendant, John O'Rourke.

Thomas White, New York City, for defendant, Ralph Rivera.

Kenneth D. Wasserman, New York City, for defendant, Samanta Torres.

James C. Neville, Harwood & Neville, New York City, for defendant, Larry Weinstein.

David Greenfield, New York City, for defendant, Myles Coker.

Roger J. Schwarz, New York City, for defendant, Jose Colon.

Valerie Amsterdam, New York City, for defendant, Carmen Mendoza.

### MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

For purposes of this opinion, familiarity with the facts of this case, which involves a heroin distribution conspiracy known as "Blue Thunder," are presumed. *See United States v. Millan–Colon,* 829 F.Supp. 620 (S.D.N.Y.1993); *United States v. Millan,* 817 F.Supp. 1086 (S.D.N.Y.1993); *United States v. Millan,* 817 F.Supp. 1072 (S.D.N.Y.1993). Presently before the Court are defendants Al Bottone, Sr., Al Bottone, Jr., Vincent Basciano, Eric Millan, Larry Weinstein and Carmen Mendoza's (collectively, the "Defendants") motions for: (1) severance, pursuant

to Rule 14 of the Federal Rules of Criminal Procedure and the Second Circuit's opinion in *United States v. Casamento,* 887 F.2d 1141 (2d Cir.1989), *cert. denied,* 493 U.S. 1081, 110 S.Ct. 1138, 107 L.Ed.2d 1043 (1990); (2) a pre-trial hearing to determine the extent, if any, of law enforcement misconduct with regard to the Title III interceptions in this case; (3) an opportunity to relitigate all previously submitted motions, including a requested hearing pursuant to *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978); and (4) a continuance. These motions stem from the Court's April 16, 1993 decision granting a mistrial in this case in light of the prejudicial impact of the Government's opening statement, failure to establish a clear chain of custody over the evidence and daily revelations that certain key witnesses, namely, three law enforcement officers, were engaged in corrupt activities. *See United States v. Millan,* 817 F.Supp. 1086 (S.D.N.Y.1993). The Government opposes these motions and cross-moves for an order (1) limiting *voir dire* examination of the prospective jurors so that no venireperson's name, address or employer is disclosed; (2) directing that the jurors be kept together, accompanied by a United States Marshal and transported to and from the courthouse from an undisclosed central location; and (3) reaffirming all prior rulings of the Court. For the reasons that follow, the defendants' motions are denied in part and granted in part. The Government's cross-motion is denied.

### DISCUSSION

I. *Defendants' Request for a "Casamento" Severance*

In accordance with Rule 14 of the Federal Rules of Criminal Procedure and the Second Circuit's opinion in *United States v. Casamento,* 887 F.2d 1141 (2d Cir.1989), *cert. denied,* 493 U.S. 1081, 110 S.Ct. 1138 (1990) ("*Casamento*"), defendants Bottone, Sr., Bottone, Jr., Basciano, and Mendoza[1] request a

---

1. The Government has agreed to Mendoza's request for severance. *See* Letter from Assistant United States Attorneys Dietrich L. Snell and Roland G. Riopelle to the Honorable Shirley

Wohl Kram of 9/10/93, at 3. Recognizing that Mendoza's physical health and the health of her child may be at risk, the Court grants Mendoza's application for a severance with time excluded

severance of the above-captioned case into two trials consisting of: first, a trial of the alleged "street-level distributors," followed by; second, a trial of the alleged "suppliers." The Government opposes this request.

In *Casamento*, the Second Circuit upheld the District Court's decision to conduct a seventeen-month joint trial of twenty-one defendants on a wide variety of charges, including narcotics conspiracy, money laundering, RICO, and RICO conspiracy. *See United States v. Casamento*, 887 F.2d at 1151. Although the *Casamento* court indicated that in rare cases where the prosecution's case is expected to exceed four months and involve more than ten defendants the trial court should carefully consider a severance, *id.* at 1151–53, the court declined to adopt any *per se* rule, and instead, acknowledged that the trial judge enjoys "considerable discretion" in determining whether a severance should be granted, *id.* at 1151.

■ At a pre-trial conference on September 9, 1992, the defendants in this case previously raised *Casamento*, as grounds for severing this matter into two trials. Thereafter, despite the defendants' *Casamento* concerns, the case proceeded to trial with twelve defendants. The retrial, currently scheduled for October 12, 1993, will consist of eleven defendants, one defendant *less* than the twelve present at the outset of the first trial, and is expected to continue for over four months. The Court did not find previously, nor does it now hold, that the anticipated length and complexity of this trial warrants severance into two separate trials of "suppliers" and "distributors." Rather, the prior proceedings indicate that the present case involves a cohesive heroin distribution organization whose operation, while encompassing many participants, can be readily and best understood by a single jury. In addition, as the same body of evidence is admissible against all defendants, a severance would result in several lengthy and duplicative trials, which would constitute a waste of judicial and law enforcement resources. Accordingly, the defendants' request for a *Casamento* severance is denied.

under the Speedy Trial Act, 18 U.S.C.

## II. Defendants' Request for a Minimization Hearing

Defendants contend that a pretrial hearing is necessary to scrutinize alleged government misconduct with regard to the Title III interceptions involved in the *Millan* investigation. Specifically, defendants allege that agents, monitoring the defendants' wiretapped conversations, listened with the intent to locate drug locations and then burglarize these locations. *See* Letter from Benjamin Brafman to the Honorable Shirley Wohl Kram of 8/20/93, at 1. Consequently, according to defendants, the conversations were not properly minimized.

As this same request was extensively discussed and found to be without merit in the Court's March 29, 1993 Order, 817 F.Supp. 1072, the Court will not revisit this issue again. Rather, for substantially the same reasons set forth previously, *see* March 29, 1993 Order, 817 F.Supp. at 1079–80, the defendants' motion is denied.

## III. Defendants' Request for a Franks Hearing

■ Pursuant to the Supreme Court's decision in *Franks v. Delaware*, 438 U.S. 154, 155–56, 98 S.Ct. 2674, 2676–77, 57 L.Ed.2d 667 (1978), a defendant is entitled to a evidentiary hearing where he or she presents proof that an affiant knowingly, intentionally or recklessly included false statements in a search warrant affidavit. Specifically, in order to warrant a hearing, the defendant must: (1) allege a deliberate falsehood, supported by offers of proof, on the part of the affiant; (2) point out specifically the portion of the warrant affidavit claimed to be false, accompanied by a statement of supporting reasons; and (3) provide affidavits of witnesses, or explain why such were not provided. *Id.* at 171, 98 S.Ct. at 2684. Mere conclusory allegations based on a desire for cross-examination or allegations of negligent or innocent mistake are not sufficient. *Id.*

■ With this standard in mind, the Court finds that the defendants in this case have failed to identify a single inaccuracy in any of

§ 3161(h)(3) & (8).

the affidavits filed in support of the warrants, or present any evidence indicating that a *Franks* hearing is necessary. Accordingly, as the defendants have failed to present the proof required by the *Franks* Court, their request for a hearing, pursuant to that Court's decision, is denied.

## IV. *Defendants' Request for a Continuance*

■ By letter dated September 4, 1993, the Court was informed that counsel for Millan, who was assigned to this case on August 26, 1993, has been unable to obtain the case file from Millan's former counsel despite repeated efforts.[2] *See* Letter from Gino Josh Singer to the Honorable Shirley Wohl Kram of 9/4/93, at 1; *see also* Letter from Sanford M. Katz to the Honorable Shirley Wohl Kram of 9/9/93, at 1 (noting that having just been assigned to represent defendant Larry Weinstein on August 2, 1993, defense counsel has been unable to review "more than a fraction of the files"). In addition, at a September 21, 1993 pre-trial conference, counsel for defendant John O'Rourke was relieved as a result of irreconcilable differences. As of this date, new counsel has not been assigned.

Moreover, most, if not all of the defendants in the *Millan* case have filed appeals with the Second Circuit to review this Court's July 30, 1993 decision, 829 F.Supp. 620, and at least one defendant is pursuing an appeal to the Supreme Court of the Second Circuit's September 1, 1993 decision, *U.S. v. Millan,* 4 F.3d 1038 (2d Cir.1993). With only three weeks left before the scheduled trial date and in light of recent events—the appointment of new counsel to defendants Millan and O'Rourke and the pending appeals—the Court finds that ordering these counsel to trial with only three weeks preparation is unfair and potentially prejudicial to their clients' rights. Accordingly, the Court will grant a one month continuance, with a new trial date set for November 15, 1993.

In reaching this decision, however, the Court is mindful that this case has been pending for more than two years and involves incarcerated defendants, whose continued detention already tests constitutional limits. Therefore, the various scheduling conflicts claimed by defense counsel will not be considered grounds for further adjournments. Indeed, all counsel were on notice immediately following the April 16, 1993 mistrial declaration that a retrial was imminent, and thus, despite their arguments to the contrary, aware that any upcoming engagements would conflict with this case.

## V. *Government's Request for an Anonymous and Sequestered Jury*

■ The Second Circuit advocates the use of anonymous juries where there is a "strong reason" to believe that the jury needs protection. *United States v. Paccione,* 949 F.2d 1183, 1192 (2d Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 3029, 120 L.Ed.2d 900 (1992); *United States v. Vario,* 943 F.2d 236, 239 (2d Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 882, 116 L.Ed.2d 786 (1992); *United States v. Thomas,* 757 F.2d 1359, 1365 (2d Cir.), *cert. denied sub nom. Fisher v. United States,* 474 U.S. 819, 106 S.Ct. 66, 88 L.Ed.2d 54 (1985). The Second Circuit also recognizes, however, that as the "presumption of innocence" is a cornerstone of our criminal justice system, any practice which effects this presumption, including the use of anonymous juries, must receive "close judicial scrutiny." *United States v. Thomas,* 757 F.2d at 1363. Thus, anonymous juries were empaneled where the defendant had a serious criminal record and a history of jury tampering attempts, *United States v. Tutino,* 883 F.2d 1125, 1132–33 (2d Cir.1988), *cert. denied,* 493 U.S. 1081, 110 S.Ct. 1139, 107 L.Ed.2d 1044 (1990); threats were made against witnesses and prosecutors, who were depicted by the defendants in "wanted dead or alive" posters and referred to as "war criminals," *United States v. Ferguson,* 758 F.2d 843, 854 (2d Cir.), *cert. denied,* 474 U.S. 841, 106 S.Ct. 124, 88 L.Ed.2d 102 (1985); and defendants were alleged to be very dangerous individuals engaged in large-scale organized crime who had participated in several "mob-style" killings and attempted to interfere with the judicial process by murdering government witnesses, *United*

---

**2.** By Order dated September 22, 1993, the Court has ordered Millan's former counsel, upon threat of contempt, to transfer the entire case file to Millan's new counsel forthwith.

*States v. Thomas,* 757 F.2d at 1364. Anonymous juries were found unnecessary, however, in cases such as *United States v. Coonan,* 664 F.Supp. 861 (S.D.N.Y.1987), in which the defendants were charged with murder, attempted murder, kidnapping, loansharking, extortion and narcotics trafficking, had a history of felony prosecutions, and were generating a great deal of publicity. *See also United States v. Corrao,* No. 86 Cr. 556, 1988 WL 36329 (S.D.N.Y. April 11, 1988) (where a similar request by the government was denied despite evidence that a defendant was charged with endeavoring to obstruct the charges facing a member of another organized crime family, the Gambino crime family, with whom the defendant associated, had caused a mistrial by compromising several jurors, and the fact that the case drew extensive media attention).

▮ In the case at hand, the Government requests that the Court issue an order (1) limiting *voir dire* examination of the prospective jurors so that no venireperson's name, address or employer is disclosed; (2) directing that the jurors be kept together and accompanied by a United States Marshal; and (3) directing that jurors be transported to and from the courthouse from an undisclosed central location. The Government argues that an anonymous jury is warranted as: (1) the defendants face tremendous penalties, giving them an incentive to tamper with the jury; (2) the prospective jurors may fear for their welfare if their names and addresses are disclosed to the defendants; (3) the defendants have a long and sordid history of violence and associations with organized crime; (4) defendants Millan and Bottone, Sr. have evidenced an inclination to threaten and intimidate potential witnesses; (5) the defendants' request to redo the seventh round of juror selection in the first trial was motivated by a desire to have jurors of limited economic means, who could be easily bribed, remain on the panel; and (6) the likelihood of extensive prejudicial publicity threatens to subject the jury to external pressure and influence. Addressing these arguments in turn, the Court does not find

that the empaneling of an anonymous jury is appropriate here.

First, although as the Government contends, the defendants in this case do face stiff penalties if convicted, this fact does not in and of itself lead to the conclusion that the defendants will engage in jury tampering. As the Court noted in *United States v. Coonan,* 664 F.Supp. 861 (S.D.N.Y.1987) (Knapp J.), although defendants may be charged with very serious conduct, an important distinction exists between allegations "consistent with ... conduct charged in the indictment" and allegations of "conduct aimed at the judicial process." *Id.* at 863. Indeed, despite charges of violent conduct contained in an indictment, some defendants "seem to draw the line at interfering with those who are engaged in the administration of the judicial process." *Id.* Thus, although criminal penalties, such as those facing defendants here, would appear to be a factor weighing in favor of protecting the jurors' identities, the Court must investigate further.

Second, the Government points to an incident which occurred during the first trial in which a juror wrote a note to the Court expressing concern for his safety, *see* Transcript of First Trial ("TR."), dated March 9, 1993, at 99–111, as evidence that the prospective jurors may fear for their welfare if their names are disclosed. Specifically, one of the jurors sent the Court a note asking, "One, do the defendants or their lawyers know our address? Two, are we in danger?" Tr. at 99. When the Court interviewed the juror in the presence of counsel, the juror indicated that he had "never been in this kind of trial like that" and wanted to "know how are the rules...." Tr. at 104. When questioned further, the juror assured the Court that he was not afraid and simply "wanted an answer ... wanted to ask." Tr. at 111. Thus, contrary to the Government's position, the Court finds that this lone juror's so-called "fear" was actually concern due from inexperience—concern which was easily eliminated after a simple explanation of court procedures. Tr. at 104–05, 110–11.[3] Therefore, this factor is not persuasive.

---

3. In addition, the Court's directive that the jurors eat lunch in the jury room, for practical reasons,

led one juror to ask "are our lives in danger?" Tr. at 108. Ironically, the very relief the Govern-

Third, citing an article which appeared in the *Daily News* in which defendant Basciano is described as a "reputed Bonanno mobster," the Government indicates that at least one of the defendants has ties to organized crime which supports empaneling an anonymous jury. The Court finds, however, that observations by a *Daily News'* reporter, or evidence that Basciano engaged in the illegal "numbers" business, are hardly proof that defendants are linked to a "long and sordid history of violence and associations with organized crime." Government's Memorandum of Law, dated August 27, 1993 ("Gov't Mem."), at 7. In addition, despite the Government's reliance on Basciano's rap sheet as evidence that the defendant has been convicted of a weapons charge in a "gangland-style shooting," *see* Gov't Mem. at 7, the rap sheet, while indicating prior convictions on a weapons charge, contains no information regarding the alleged "gangland-style shooting."

In the case at hand, the Government has offered no proof, beyond innuendo, that any defendant is a member of an organized crime family, *compare United States v. Vario*, 943 F.2d at 239, and has not shown any connection between the defendants' alleged "mob" affiliation and jury fears—a showing which the Second Circuit has deemed essential. *See id.* at 241.

> Before a district judge may rely on the organized crime connection of a defendant as a factor in the question of anonymous juries, he must make a determination that this connection has some direct relevance to the question of juror fears or safety in the trial at hand, beyond the innuendo that this connection conjures up.

*Id.* at 241; *see, e.g., United States v. Paccione*, 949 F.2d at 1192–93 (in which the Second Circuit upheld empaneling an anonymous jury in response to two government

affirmations indicating that (1) a defendant named in the indictment had been murdered in circumstances suggesting responsibility by certain co-defendants; (2) a confidential informant had linked defendants to the Gambino crime family; (3) various persons had been threatened with a baseball bat or a pistol; and (4) a government witness had received an anonymous, middle-of-the-night phone call suggesting he forget his testimony). Here, the Government has not submitted any such details in support of its motion. Thus, the Court cannot justify empaneling an anonymous jury on this basis of bare allegations of mob affiliation.

Fourth, citing *United States v. Paccione*, 949 F.2d at 1193, the Government contends that as defendants Millan and Bottone, Sr. have both evinced an inclination to threaten and intimidate potential witnesses, they would be equally inclined to tamper with the jurors empaneled in this case. Specifically, the Government relies upon testimony regarding veiled threats, to the effect that family members of any person who chose to cooperate with the Government would be in danger, from Millan to potential witnesses. Tr. of June 3, 1993, at 138, 154. With respect to Bottone, Sr., the Government contends that Bottone, Sr. showed a co-defendant a list of names and addresses of the defendants in this case, and conveyed the clear threat that "anyone considering cooperating with the Government should reflect on the ease with which family members could be located and harmed." Affirmation of Assistant United States Attorney Roland Riopelle, dated August 27, 1993 ("Riopelle Aff."), at ¶ 6. Although this factor supports the Government's request for an anonymous jury, the Court finds no evidence that any juror in the first trial was approached by these defendants, much less threatened or intimidated.[4]

---

ment now seeks, which includes the sequestering of the jury at all recesses, is likely to engender fear on the jurors' part that they are in danger. In the future, the Court believes that careful instructions to the jurors, advising them that procedures such as keeping them together during lunch are imposed for reasons other than danger, will allay any fearful concerns.

4. Although the Government has recently alleged that a confidential informant confirmed its

"fears" as to the defendants' intention to interfere with the judicial process, the Court cannot credit this evidence at this time. Specifically, the Government avers that a confidential informant, conversing with a relative of defendant Basciano following the April 16, 1993 mistrial declaration, learned that Basciano claimed to have induced three members of the jury to vote to acquit him if the case went to verdict. *See* Letter from Assistant United States Attorneys Dietrich L. Snell and Roland Riopelle to the

Fifth, the Government claims that certain events in the first trial "supports the inference" that the defendants intend to attempt to improperly influence the prospective jurors in this case. Specifically, the Government notes that during the seventh round of peremptory challenges, defense counsel conferred among themselves—outside the presence of their clients—and challenged two prospective jurors, in accordance with the practice employed theretofore during the challenge process. After striking the two jurors, both of whom appeared to be of extremely limited financial means, defense counsel passed the jury board containing the remaining jurors' names to the Government. The Government then exercised its single peremptory challenge for that round. While all parties were awaiting the Court's return to the bench, Basciano's counsel suddenly summoned all defense counsel and defendants to re-convene in the holding cell behind the courtroom. After a conference of approximately twenty minutes, counsel approached the Court requesting that the seventh round of peremptory challenges be re-done as the defendants objected to their attorneys' exercise of the challenges in that round. Evidently, according to the Government, some of the defendants were adamant that at least one of the stricken prospective jurors remain on the jury. At that time, the Government stipulated to the withdraw of the challenges exercised in the seventh round, on condition that the Government receive an extra peremptory challenge. The Government now submits that "the only plausible explanation for the defendants' apparently heated disagreement with their counsel on this issue is that the defendants perceived one or both of the two stricken jurors to be individuals whom they could influence with a bribe." Gov't Mem. at 10.

▮ Although, as the Government points out, *United States v. Tutino*, 883 F.2d at 1132–33, does hold that a track record of jury tampering or intended jury tampering is a basis for granting a request for an anonymous jury, there is no credible evidence supporting that inference here. To infer a scheme of tampering because the defendants actively participate in jury selection, is inappropriate. Furthermore, there is no evidence anywhere in the record that the defendants were loading the jury panel with jurors of very limited economic means with the intent of bribing them. Indeed, the Government consented to defense counsel's request and stipulated to the withdrawal of the seventh-round peremptory challenges. Thus, unless some evidence to the contrary appears, the Court cannot credit these allegations.

Sixth, the Government maintains that the likelihood of prejudicial publicity in this case will subject the jury to undue pressure and influence. Although pretrial publicity is a factor weighing in favor of anonymous juries, *see United States v. Vario*, 943 F.2d at 240, the Court is not persuaded that anonymity is appropriate on that basis. A large part of the publicity generated during the first trial involved the daily disclosures of police corruption by the Government regarding law enforcement officers and witnesses connected with the *Millan* investigation. The Court does not foresee, however, that the retrial of this matter will command the same amount of publicity. Moreover, despite the publicity occasioned by the first trial, and the access which the media had to the names, addresses and backgrounds of the first panel of jurors, the Court is aware of no incident wherein a juror was approached by the press during the trial or unfairly prejudiced by the daily media coverage. Finally, the Court finds that daily instructions to the jury by the Court, admonishing them to refrain from reading the newspapers or watching the television news, will remedy the potential for prejudicial publicity.

In conclusion, weighing the above factors, the Court finds that the balance tips in favor of denying the Government's request. Accordingly, the Government's motion for an anonymous and sequestered jury is denied, with the following exception. It has long been this Court's practice to preclude ques-

Honorable Shirley Wohl Kram of 9/16/93, at 3. Not only is this allegation hotly contested by defense counsel, *see* Letter from Benjamin Brafman to the Honorable Shirley Wohl Kram of 9/21/93, but it also constitutes unverified and unsworn triple hearsay. Accordingly, while the Court notes the Government's allegations for the record, these allegations have no persuasive effect.

tioning of jurors as to their exact addresses or places of employment. This practice will be followed in this case. In addition, in keeping with the Court's orders in the first trial, the jurors shall be kept in the custody of the United States Marshal upon their arrival at the courthouse until after the close of court each day. The Marshal shall also make appropriate arrangements for the jurors to eat lunch together in the courthouse.

VI. *Defendants' Request for Relitigation of All Prior Motions and the Government's Request for Reaffirmation of All Prior Rulings*

 Bottone, Jr. seeks "[a]n opportunity to re-litigate all previous submitted motions", *see* Letter from David Breitbart to the Honorable Shirley Wohl Kram of 8/26/93, at 1. The Government requests that the Court issue "an order reaffirming all prior evidentiary rulings made by the Court before and during the first trial of this matter." *See* Notice of Motion, dated August 27, 1993, at "(b)." Both these requests are too broad, vague and premature. Accordingly, they are denied with leave for the parties to submit by letter the specific rulings and/or motions they wish reaffirmed or relitigated, and the grounds therefore.

### CONCLUSION

For the reasons set forth above, the defendants' request for (1) a severance, pursuant to Rule 14 of the Federal Rules of Criminal Procedure and the Second Circuit's opinion in *Casamento* ; (2) a pre-trial hearing to determine the extent, if any, of law enforcement misconduct with regard to the Title III interceptions in this case; and (3) a hearing pursuant to *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), are denied. The Government's cross-motion for an order (1) limiting *voir dire* examination of the prospective jurors so that no venireperson's name, address or employer is disclosed; and (2) directing that the jurors be transported to and from the courthouse from an undisclosed central location, is also denied. As set forth above, however, the jurors shall be kept in the custody of the United States Marshal upon their arrival at the courthouse until after the close of court each day. The Marshal shall also make appropriate ar-

rangements for the jurors to eat lunch together in the courthouse. The defendants' motion for an opportunity to relitigate all previously submitted motions, and the Government's motion for an Order reaffirming all prior rulings of the Court, are denied at this time, with leave for both parties to submit by letter the specific rulings and/or motions they wish reaffirmed or relitigated, and the grounds therefore. No submissions will be accepted later than October 15, 1993, at 5:00 p.m. The defendants' request for a continuance is granted. Re-trial of this case shall commence on November 15, 1993, at 9:00 a.m.

SO ORDERED.