*167 OPINION OF THE COURT
Michael C. Eidens, J.
The defendant is charged with one count of the class C felony of criminal possession of marihuana in the first degree in violation of Penal Law § 221.30 and seeks an order setting bail. The People have opposed the motion, arguing that there is reasonable cause to believe the defendant is homicidal and suicidal. Because of the sharp fact issues, this court directed that a hearing be held. Testimony was taken on October 28 and November 12, 1997. The People presented proof by David Bosco, the defendant’s brother, Lisa Utterback, a daughter of the defendant, Investigator Arthur Zampella of the Schenectady Police Department, the arresting officer, Dr. Heidi VanBellingham, a psychiatrist assigned to make psychiatric evaluations of inmates at the Schenectady County Jail, and Anne Zalewski, a psychiatric social worker. The defendant presented no testimony.
I find the testimony of David Bosco, Lisa Utterback and Investigator Zampella to be very credible, and I also credit certain findings of Dr. VanBellingham and certain observations of Anne Zalewski.
The granting or denial of bail on a pending charge for a felony is a matter of judicial discretion (CPL 530.40 [2]) and the factors required to be considered and taken into account by the court in the exercise of that discretion are set forth in CPL 510.30 (2) (a). Those factors are: (1) the defendant’s character, reputation, habits and mental condition; (2) his employment and financial resources; (3) his family ties and the length of residence in the community; (4) his criminal record; (5) previous adjudication as a juvenile delinquent or youthful offender; (6) his previous record of responding to required court appearances or flight to avoid criminal prosecution; (7) the weight of the evidence against him and any other factor relating to probability of conviction; and (8) the sentence which may be imposed upon conviction.
This court issued an oral ruling on December 3, 1997 denying defendant’s application, and this decision is explanatory with respect to that ruling.
FINDINGS OF FACT
The defendant worked at the General Electric plant in Schenectady for many years, and was terminated in the early 1990’s. He believes his termination to have been unjust and *168 that his labor union did not support him adequately. The defendant has been very angry since his termination, and has expressed that anger to his brother, his daughter, and others. He has expressed his determination to kill certain General Electric officials he believes to be involved or responsible for his termination and the union officials who did not help him sufficiently. In August of 1997, the defendant told his daughter that he would take several of his rifles and shotguns to the General Electric plant in Schenectady and "Take them out” and that he wouldn’t spend one day in jail because he had a pistol for himself. She asked who he was specifically angry at, and he named several people who were responsible for his termination.[1] The defendant has repeatedly expressed extreme anger at those people to his brother, and talked frequently of getting revenge by shooting and killing them. He stated several times that if he couldn’t beat them in court, he would beat them in the streets.
The officer who arrested the defendant for the class C felony of criminal possession of marihuana found 18 rifles and shotguns, some with telescopic sights, in defendant’s home, and 300 to 400 bullets.
The defendant is a hunter and is very familiar with firearms.
With respect to the statutory bail factors set forth in GPL 510.30 (2) (a), I find the following:
A. Character, reputation, habits and mental condition:
The defendant is 56 years old and lives with his mother in Schenectady, New York. Mr. Bosco worked at General Electric for much of his adult life, approximately 25 years, and after he was terminated several years ago, he worked at several delivery jobs.
After the defendant was terminated by General Electric, he contacted at least three attorneys in an attempt to get his job with General Electric back. Mr. Bosco was emotionally devastated by the termination. When his efforts to get his job back failed, he began to talk about seeking revenge against the people who fired him. He frequently spoke about getting even. He was and is angry and extremely hostile, and that anger and hostility has persisted in full force since the termination. The defendant believes that General Electric officials have wronged *169 him, and he wants to get back at them in a physical and violent way. In July of 1996, during a particular conversation, Mr. Bosco told his brother David Bosco that he was also very angry with his union officials, and he wanted to shoot those union officials and the General Electric people. He was very agitated and angry during this conversation. As he sat and pointed his finger at the floor, he struck the floor violently as he gestured, and may have dislocated his finger. The defendant did not then describe a particular plan, but continually stated he was going to get even by shooting them. A number of times he said that if "I can’t beat them in the courts, I’ll beat them in the streets.” David Bosco discussed the defendant’s extreme anger with him in an effort to try to get him to overcome that anger and discard his plans of revenge. The defendant told his brother that he couldn’t forget what had happened to him. He felt he was a scapegoat, and they had "screwed him”.
During several conversations between David Bosco and his brother, he said that if his health ever failed, or his finances became bad, that is when he would take his revenge.
In August of 1997, Mr. Bosco angrily told his daughter, Lisa Utterback, that General Electric would save pension money that the company would otherwise have to pay to its former employees as a result of his shooting them. He named specific General Electric officials that he intended to shoot and kill.
The defendant discussed his desire to obtain revenge against General Electric with other individuals.
The defendant has been a daily habitual user of marihuana for approximately 30 years. He received treatment for marihuana abuse approximately five years ago, but his marihuana use continued until his recent incarceration.
Mr. Bosco’s mother is sick with colon cancer. The defendant is close to his mother. He belongs to no clubs or associations. He tries not to take medications when he does not feel well, and he eats natural foods.
The defendant is currently taking prescription medication to reduce anxiety. He began to take that medication only after being incarcerated. There was no proof introduced with respect to the defendant’s physical health, or whether he had received any mental health counseling or other services before being incarcerated. The examining psychiatrist, Dr. VanBellingham, testified that the defendant was "A challenge, diagnostically”. Dr. VanBellingham talked with the defendant about his termination from General Electric. He told her he thought he *170 was unfairly terminated. He couldn’t appreciate his bosses’ feelings about his work performance. He had a strong opinion that he was a good worker, and he couldn’t appreciate that some of the things he did were not acceptable to his employer. He told the doctor that his labor union hadn’t supported him adequately. She asked him about the death threats he allegedly made, and he told her that the threats were meant to scare people, but he never intended to acted upon those threats. She observed that the defendant had a feeling that whenever he was angry, he could express it any way he wanted, and he was unable to understand why someone would become upset about his threats.
Dr. VanBellingham stated that the defendant was somewhat delusional. She didn’t believe he had a psychotic disorder, but that he did have a personality disorder. As to his dangerousness, the psychiatrist stated that it was difficult to say whether he would be dangerous to the General Electric and union officials if he were not incarcerated. She stated that "Because these threats have gone on for so long, certainly everyone should be worried.” She testified that she believed him when he told her that he was not homicidal. She then stated, however, that "He might act on his threats.”
B. Employment and financial resources:
The defendant is unemployed and has limited financial resources. He has not been employed for several years. He doesn’t own any real property. No information was provided as to whether he had any bank accounts.
C. Family ties and length of residence in the community:
The defendant resides with his mother. He is estranged from his brother, David, because of the threats he has made and his brother’s response to them, and the fact that his brother has cooperated with law enforcement authorities. The defendant holds his brother at least partly responsible for his being in jail and facing criminal charges. The defendant is not close to one of his daughters. He is angry and disappointed at the cooperation of Ms. Utterback, his other daughter, with law enforcement officials.
D. Criminal record:
The defendant was charged with committing multiple house burglaries in three New York State counties when he was 34 years old in 1977 and was again charged with burglary in 1993 *171 in Fulton County. He has several misdemeanor convictions by reason of the arrests. He has no felony convictions.
E. History of responding to court process:
No information pertaining to this factor was presented.
F. Weight of evidence against him and probability of
conviction:
Testimony by the arresting officer reveals that the marihuana was seized by reason of a consent search of the home. The defendant’s mother consented to the search. There is a strong case against the defendant, and there is a high likelihood of a felony conviction.
G. Length of possible sentence:
The defendant faces a maximum sentence of 5 to 15 years in State prison.
CONCLUSIONS OF LAW
Conspicuous by its absence from the statutory bail factors is the factor of community safety, i.e., whether the defendant is likely by reason of past conduct to commit future crimes, as a general matter, or whether the defendant’s release on bail poses an unusual risk to specific persons or the public in general. This concept is referred to as "preventive detention”, and the strongest statement for its recognition in New York State is that it may be imposed, if at all, only in rare and extraordinary cases where the proof of danger is clear and convincing (see, People ex rel. La Force v Skinner, 65 Misc 2d 884).
The present case is very unusual because the threat to the community, if there is one, exists by reason of a situation wholly unrelated to the pending marihuana charge.[2] The danger to the community arises by virtue of the defendant’s anger toward, and threats against, certain General Electric and union officials. Therefore, any preventative detention of the defendant would not relate to the marihuana charge pending against him. He has not been arrested or charged with any crime relating to the threats of revenge that he has made.
*172 The defendant stated that he would kill himself after killing the targeted individuals. However, the Third Department has held that "a suicidal tendency cannot be equated with an intent to abscond or flee in the context of a bail application.” (People ex rel. Bryce v Infante, 144 AD2d 898, 899.) That case involved a defendant charged with the murder of his two-month-old son. The appellate court found that the suicidal tendency exhibited by the defendant prior to his indictment, but after the commission of the acts charged in that indictment, was not indicative of a desire to avoid or flee from the charges. And in that case, suicide following extreme remorse for the killing of one’s own son is surely not reflective of a self-serving desire to avoid prosecution. But in our situation, the threatened suicide of defendant is to follow the planned execution of a series of future murders. This cold-blooded willingness to place one’s interest ahead of society by killing people and then taking one’s own life to avoid prosecution and future incarceration is surely a factor the law will permit the court to take into account in determining whether to set bail on an unrelated felony charge. To hold otherwise flies in the face of reason, decency, common sense, and the bail factors set forth in CPL 510.30 (2) if those factors are considered broadly and not merely as mechanical dollar determining tools. The reason for the requirement that the bail factors be considered broadly is that the basis for a defendant’s likelihood of appearing in court is often not related to the possible loss of money. In truth, there is no specific amount of money which will guarantee, or in this case is even reasonably related to, a defendant’s appearance in court. The reasons for which a defendant would or would not appear often have no relationship to money. Since the bail statute is designed to require a court to fix an amount of money which, when posted, will guarantee the defendant’s appearance, and there is no amount of money in this case which, in the court’s judgment, will guarantee this defendant’s appearance, the setting of any specific dollar amount of bail would be arbitrary. It is not accurate to suggest, as analysis of the New York bail factors does, that a dollar figure which a court might determine is necessarily related to a likelihood of court appearance. It cannot be said here that $10,000 creates any more security for this defendant’s appearance than $10.
The only factor which weighs in defendant’s favor is the defendant’s relationship with his mother, who although elderly and ill, resides in this community. The other factors, prior criminal record, lack of employment, likelihood of conviction, *173 length of possible sentence,[3] character and habits, and mental condition. suggest the setting of a reasonably high bail or no bail.
The argument that to deny bail in this case is unconstitutional is without foundation. There is nothing in the New York State or Federal Constitution which prohibits a court from considering threats of violence and harm that a defendant has made against other individuals, and the New York State bail statute requires a court to consider a defendant’s mental condition and character. Review of the statutory New York bail factors suggests that a defendant’s mental condition is relevant only insofar as it might relate to the likelihood of his appearing in court when required. By inference, an unstable person is less likely to appear for scheduled court appearances. However, there is no statutory or case law requirement that a defendant’s mental condition be considered only insofar as it relates to the fixing of a dollar amount.
United States v Millan (4 F3d 1038, 1043) held that "The government may detain a defendant prior to trial consistent with the Due Process Clause of the Fifth Amendment so long as confinement does not amount to 'punishment of the detainee’ ” and that "Pretrial detention of a defendant, when of reasonable duration, serves important regulatory purposes, including the prevention of flight and the protection of the community from a potentially dangerous individual”. To the argument of defense counsel that the crime defendant faces here is unrelated to danger to the community, the United States Court of Appeals, Second Circuit, held in reversing the District Court’s bail determination which imposed a requirement that the dangerousness to the community and violence of the defendant be related to the conduct charged in the indictment, that "We have never required such a nexus, nor do we impose such a requirement today. The issue is whether a defendant poses a danger to the community.” (United States v Rodriguez, 950 F2d 85, 88 [2d Cir 1991].)
I find that a denial of bail is appropriate in this case based upon a finding that the People have established that the defendant’s release to the community would, under the present circumstances and at the present time, pose a clear and present danger to specific individuals. The facts upon which this is *174 based have been established to the court’s satisfaction by clear and convincing evidence.

. The defendant identified persons he intended to kill by name, but Ms. Utterback could not recall the specific names.

. The proof at the hearing showed, and the defendant does not dispute, that he has been a daily marihuana user for at least 25 years. The arresting officer testified that over 20 pounds of marihuana was taken from the defendant’s residence, but there is no contention by the People that the defendant possessed that marihuana for anything other than his own personal use.

. Since the defendant is 56 years old, serving a 5-to-15-year sentence could be considered by him as a possible life sentence.