Vincent ROBBINS, Plaintiff,

v.

(John DOE) New York City Department of Corrections, Thomas A. Coughlin III, Department of Correctional Services, (John Doe) Ulster Correctional Facility, Robert Hanslmaier, Acting Superintendent Woodbourne Correctional Facility Defendants.

No. 94 CIV 5068(AGS).

United States District Court,
S.D. New York.

Feb. 10, 1998.

Towers until February 1993. (*See* 10/17/97 Oral Arg. Tr. at 39.)

215

Lisa M. Schweitzer, Cleary, Gottlieb, Steen & Hamilton, New York City, for Plaintiff.

Frances Sands, Asst. Corp. Counsel, City of New York, New York City, Diane Kerr

McCullough, Asst. Atty. Gen., State of New York, New York City, for Defendants.

## MEMORANDUM ORDER

SCHWARTZ, District Judge.

Before the Court are defendants' motions to dismiss the complaint and, in the alternative, for summary judgment. For the reasons stated, these motions are denied.

## BACKGROUND

The essential facts are not in dispute. Plaintiff Vincent Robbins was convicted in March 1991 of Assault in the First Degree and Attempted Robbery in the First Degree. In April 1991, he was sentenced to a term of 5 to 15 years in state custody. Prior to sentencing, Robbins was held at a New York City Department of Correction ("DOC") facility as a pretrial detainee. On April 16, 1991 following sentencing, he was transferred to a New York State DOC facility. In November 1993, Robbins' conviction was reversed by the Appellate Division of the New York State Supreme Court.

After his conviction was reversed, Robbins' status reverted to that of a pretrial detainee. The parties do not dispute that, as a matter of law, custody of pretrial detainees is to be maintained in City DOC facilities and that State DOC facilities are to be used for the confinement of persons under sentence of imprisonment. However, after his conviction was vacated, Robbins was not returned to a City DOC, but was kept in Woodbourne Correctional Facility ("Woodbourne"), a general confinement state correctional facility. In January or February of 1994, Robbins twice told defendant Hanslmaier, Acting Superintendent of Woodbourne at the time, that he should not be at Woodbourne as a pretrial detainee. Hanslmaier promised to investigate. On March 21, 1994, Robbins was transferred to a City DOC facility on Rikers Island ("Rikers") for a court appearance and remained at Rikers for court appearances in March and April 1994. On May 24, 1994, Robbins was transferred from Rikers back to Woodbourne. Upon his return to Woodbourne, Robbins informed the Grievance Coordinator that he should be returned to

Rikers because his conviction had been reversed. However, no action was ever taken on his request.

On June 27, 1994, Robbins filed a *pro se* complaint seeking damages and requesting to be transferred out of the state prison. However, even after the filing of this complaint, Robbins was transferred back and forth between Woodbourne and Rikers several times. On July 5, 1994, he was transferred from Woodbourne to Rikers for a court appearance on July 12, 1994. On July 28, 1994, he was transferred back from Rikers to Woodbourne. On August 11, 1994, he was transferred from Woodbourne to Rikers for a court appearance on August 17, 1994. On August 31, 1994, he was transferred back to Woodbourne. On September 19, 1994 he was transferred back to Rikers from Woodbourne. During these transfers, Robbins was usually transferred through Ulster Correctional Facility. According to Robbins, his custody in the State facility continued for a period of at least 10 months following reversal of his conviction, from November 1993 to September 1994.

Robbins now claims damages pursuant to 42 U.S.C. § 1983 resulting from his wrongful confinement in Woodbourne for the extended period following the reversal of his conviction. Specifically, Robbins claims that as a result of his being held at Woodbourne, he (1) suffered stress and mental anguish as a result of being far away from his family, (2) missed several court appearances in New York State Supreme Court related to his retrial, (3) was subjected to testing for tuberculosis each time he was transferred between State and City DOC facilities, (4) faced an increased risk of physical harm and violence during each transfer and (5) was required to work on a regular basis at Woodbourne (something he would not have had to do as a pretrial detainee in a City DOC facility).

The State defendants, Coughlin, Hanslmaier and the Superintendent of Ulster Correctional Facility (who is designated only as "John Doe" in the *pro se* complaint), have moved to dismiss the complaint. Defendant New York City Department of Correction has moved to dismiss the complaint and, in the alternative, for summary judgment. For the reasons stated, these motions are denied.

## DISCUSSION

On a motion to dismiss a complaint, the allegations are liberally construed and considered in the light most favorable to the pleader. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Similarly, a motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). In considering the record before it in connection with a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-moving party, and may not properly grant summary judgment where the issue turns on the credibility of witnesses. *Azrielli v. Cohen Law Offices,* 21 F.3d 512, 517 (2d Cir. 1994). In this case, plaintiff's allegations are sufficient to survive defendants' motions.

### A. Plaintiff's Constitutional Claims

To assert a § 1983 claim, a plaintiff must allege that certain conduct, committed by a person under color of state law, resulted in a deprivation of the plaintiff's rights under the Constitution of the United States. *Patterson v. Coughlin,* 761 F.2d 886, 890 (2d Cir.1985). The Due Process clause protects a person against "punishment" prior to adjudication of guilt conducted in accordance with due process of law. *See Bell v. Wolfish,* 441 U.S. 520, 533–537, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Thus, "[t]he government may detain a defendant prior to trial consistent with the Due Process Clause of the Fifth Amendment so long as [the] confinement does not amount to punishment of the detainee." *United States v. Millan,* 4 F.3d 1038, 1043 (2d Cir.1993).

218

In general, as this Court has held, a pretrial detainee's transfer between state correctional facilities, for a limited period of time, does not amount to "punishment" under the Fourteenth Amendment. *Butler v. New York State Correctional Dept.*, 94 Civ. 5054, 1996 WL 438128 at *5 (S.D.N.Y. Aug.2, 1996). Indeed, "[p]retrial detention of a defendant, when of reasonable duration, serves important regulatory purposes, including the prevention of flight and the protection of the community from a potentially dangerous individual." *Millan*, 4 F.3d at 1043.

However, "[o]therwise valid pretrial detention does assume a punitive character, and thus offends the due process clause, when it is significantly prolonged." *United States v. Gallo*, 653 F.Supp. 320, 334–335 (E.D.N.Y.1986). *See also United States v. Melendez–Carrion*, 790 F.2d 984, 1007 (2d Cir.1986) (Feinberg, J., concurring) ("lengthy delay can transform what might otherwise be a valid regulatory measure into one that is punitive regardless of Congress' stated intentions.") The Due Process clause is implicated by extended pretrial detention because the "quality of the detainee's legal defense is likely to diminish dramatically as long as he or she is incarcerated" [and] "detention is likely to increase the chances of conviction at trial." *Gallo*, 653 F.Supp. at 337. Most importantly, placing pretrial detainees in facilities designed for, and occupied by, convicted prisoners also carries a punitive element. *See e.g. Morales Feliciano v. Hernandez Colon*, 697 F.Supp. 37, 45–46 (D.P.R.1988), *aff'd sub nom. Morales–Feliciano v. Parole Bd. Of Puerto Rico*, 887 F.2d 1 (1st Cir.1989) ("knowing[] commingling of . . . pretrial detainees with convicts suffering punishment for crime, [causes a prison to] also punish the unconvicted however unexplicit the officials' purpose to punish may be.") Accordingly, the prolonged confinement of a pretrial detainee in a facility statutorily designated for convicted prisoners raises the spectre of a Constitutional violation.

Determining whether the length of pretrial detention is constitutionally excessive requires a factual analysis which balances the length of the detention against the reasons for the detention. *Millan*, 4 F.3d at 1043. In this case, plaintiff alleges that he was confined in state DOC facilities designed for housing convicted prisoners for at least 10 months after his conviction was reversed. The defendants have offered no reason for this prolonged confinement. Thus, the complaint, liberally construed, is sufficient to survive both defense motions.[1]

**B. The Defendants' Responsibility**

One of the defendants in this case is the New York City Department of Correction. To hold a municipal agency liable under § 1983, a plaintiff must demonstrate that the municipality maintained an official custom or policy which caused the plaintiff to be deprived of a Constitutional right. *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir.1983). Alternatively, the plaintiff may demonstrate that the municipality acted with deliberate indifference to constitutional rights by failing to adopt a policy, where failure to adopt such policy would likely result in deprivation of an individual's constitutional rights. *City of Canton v. Harris*, 489 U.S. 378, 390, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). Here, there is a material question as to whether Mr. Robbins' repeated transfers between State and City correctional facilities were undertaken pursuant to a custom or policy of the New York City DOC. Far from failing to state a claim, Robbins' allegations regarding the number and frequency of transfers suggest that the failure to return him to a City facility was indeed the result of an authorized policy.

The defendants also include three New York State correctional services officials. To hold an individual personally liable under § 1983, a plaintiff must show that he or she (1) directly participated in actions resulting in a constitutional deprivation; (2) acting as a supervisory official,

1. The State defendants' reliance on the fact that the New York State statute prohibiting the commingling of pretrial detainees and convicted prisoners was suspended during the events in issue is misplaced. Mr. Robbins' challenge to his confinement is brought pursuant to the United States Constitution, not pursuant to New York State statutes.

failed to remedy the deprivation after learning of the violation through a report or appeal; (3) created a policy or custom under which unconstitutional practices occurred or (4) was grossly negligent in managing the subordinates who caused the unconstitutional deprivation. *Williams v. Smith,* 781 F.2d 319, 323–324 (2d Cir.1986). Personal involvement of defendants in alleged § 1983 actions is a question of fact. *Williams,* 781 F.2d at 323. For the reasons stated, the allegations in this case are sufficient to create a material issue of fact with regard to the question of whether the state defendants, acting as supervisory officials, failed to remedy a constitutional violation after learning of the violation through a request or the filing of a civil complaint. Finally, although the state defendants have raised the defense of state immunity under the Eleventh Amendment, this doctrine does not apply to suits brought against state officials in their individual capacities. *Berman Enters., Inc. v. Jorling,* 3 F.3d 602, 606 (2d Cir.1993).

Accordingly, the defendants' motions are denied. The parties are directed to agree upon and submit to the Court a schedule for submission of a pre-trial order.

SO ORDERED.